(83 South. 696)

No. 23819.

STATE v. CLARK.

(Jan. 5, 1920. Rehearing Denied Feb. 2, 1920.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW ⬬198 — JUVENILE COURT HAD JURISDICTION OF PROSECUTION FOR FAILURE TO SUPPORT CHILD, ALTHOUGH CONVICTION OF SIMILAR CHARGE COVERING A PRIOR PERIOD HAD BEEN APPEALED FROM.

In a prosecution for willfully and without just cause neglecting to provide for the support of minor child, in violation of Act No. 34 of 1902, the juvenile court was not without jurisdiction because accused had been tried and convicted upon a charge for failure to support the child during a period prior to that covered by the information herein and had appealed to the Supreme Court and filed a transcript therein, as the instant prosecution did not rest upon the same subject-matter or acts as those involved in the appealed prosecution.

2. CRIMINAL LAW ⬬198—PLEA OF FORMER ACQUITTAL OF NO FORCE WHERE PROSECUTIONS COVERED DIFFERENT PERIODS.

In a prosecution on information for willfully and without just cause neglecting to provide for the support of his minor child, in violation of Act No. 34 of 1902, a plea of former acquittal was of no force where the instant charge was not for the same time as that alleged in the former prosecution in the sense contemplated by Const. art. 9.

3. PARENT AND CHILD ⬬17(2)—THAT NO DEMAND WAS MADE TO SUPPORT CHILD NO DEFENSE TO PROSECUTION FOR NONSUPPORT.

In a prosecution on information for willfully and without just cause neglecting to provide for the support of his minor child in violation of Act No. 34 of 1902, it was no defense that no demand had been made from defendant by the mother of the child or by the state for its support, as no one was in a better position to know than defendant, and as the statute does not in terms make a demand necessary.

4. INDICTMENT AND INFORMATION ⬬101— FAILURE OF INFORMATION TO INCLUDE MIDDLE NAME OF CHILD IN PROSECUTION FOR NONSUPPORT NO DEFENSE.

In a prosecution for neglecting to provide for the support of minor child in violation of Act No. 34 of 1902, an objection that, while the information mentioned the child as Courtney Clark, whereas its correct name was Courtney Arvid Clark, the child was not properly identified, was without merit, in view of Rev. St. § 1063, and of the fact that its identity was not in doubt.

5. PARENT AND CHILD ⬬17(6)—AFFIDAVITS IN FORMER PROSECUTION FOR NONSUPPORT ADMISSIBLE AS SHOWING KNOWLEDGE OF NECESSITOUS CIRCUMSTANCES.

In a prosecution on information for neglecting to provide for the support of minor child, introduction in evidence of affidavits made by the wife as the basis of her former prosecution of him for failure to support the same child during a different period solely to show that he knew that the child was in necessitous circumstances and in response to his contention that no demand had been made for support was proper.

6. PARENT AND CHILD ⟨key⟩17(6)—IN PROSECU-
TION FOR NONSUPPORT OF CHILD LETTERS BY
DEFENDANT TO HIS ALLEGED WIFE PROPERLY
ADMITTED.

In a prosecution for willfully neglecting to
support minor child, in violation of Act No. 34
of 1902, the admission of letters purporting to
have been written by accused to his alleged
wife and a contract supposed to have been made
between him and an insurance company for
which he was working was not objectionable on
the ground that a marriage between himself
and mother of child could not be so proven,
where the marriage had already been proven
by copies of official records properly certified,
and the alleged wife in rebuttal had identified
him as the man whom she had married, and
had identified the letters and his handwriting
and signature, and where the admission of the
documents was to corroborate the other evidence
as to identity of accused as the man she mar-
ried.

7. PARENT AND CHILD ⟨key⟩17(7)—REQUESTED
INSTRUCTION IN PROSECUTION FOR NONSUP-
PORT PROPERLY REFUSED AS INAPPLICABLE.

In a prosecution for willfully neglecting to
support a minor child, in violation of Act No.
34 of 1902, defendant's requested charge that,
where the state rested its case upon a marriage
by ceremony, no evidence was admissible to
prove a marriage by admission, reputation, or
cohabitation, and where no presumption of mar-
riage arose from such evidence, was properly
refused, as being inapplicable.

8. STATUTES ⟨key⟩118(1)—SUBJECT OF ACT PUN-
ISHING DESERTION OR NONSUPPORT OF MINOR
CHILD EXPRESSED IN TITLE.

Act No. 34 of 1902, by its title declaring
it an offense to desert or willfully and without
just cause neglect to provide for support of a
minor child, does not violate Const. 1898, art.
31, providing that every law enacted by the
General Assembly shall embrace but one ob-
ject, which shall be expressed in the title, in
that the act makes both desertion and failure
to support minor children offenses, and pe-
nalizes either act, as its only object was to com-
pel the father to care for the moral and physi-
cal welfare of minor children.

9. STATUTES ⟨key⟩86—ACT MAKING NONSUPPORT
OF MINOR CHILD AN OFFENSE IS A GENERAL,
AND NOT A SPECIAL, LAW.

Act No. 34 of 1902, making it an offense
to willfully and without just cause neglect to
provide for the support of a minor child, does
not violate Const. 1898, art. 48, prohibiting
special or local laws, as the act is a general
law effective throughout the state.

10. STATUTES ⟨key⟩21—CONSTITUTIONAL PROVI-
SIONS AS TO PASSAGE OF SPECIAL OR LOCAL
LAW NOT APPLICABLE TO ACT PUNISHING
NONSUPPORT OF CHILD.

Act No. 34 of 1902, making it an offense to
willfully and without just cause neglect to pro-
vide for the support of a minor child, not be-
ing a special or local law, Const. 1898, art. 50,
providing the manner and circumstances under
which a special or local law may be passed, has
no application.

11. INFANTS ⟨key⟩16—PARENT AND CHILD ⟨key⟩17
(1) — ACT MAKING NONSUPPORT OF MINOR
CHILD AN OFFENSE WAS NOT SUPERSEDED BY
CONSTITUTIONAL AMENDMENTS.

Act No. 34 of 1902, making it an offense
to willfully neglect to support a minor child,
was not superseded by Const. 1913, art. 118,
embracing the provisions of Act No. 83 of 1908,
amending the Constitution of 1898 and creat-
ing juvenile courts throughout the state, as
amended by Act No. 48 of 1910, also an amend-
ment to the Constitution, which the convention
of 1913 copied into the Constitution of that
year in lieu of the old article 118, as the amend-
ments and Const. 1913, art. 118, did not cover
the same subject-matter as Act No. 34 of 1902,
so that all laws dealing with adults contrib-
uting to the neglect or delinquency of minors
were left intact, and the Legislature was free
to pass such others as it might see fit.

12. PARENT AND CHILD ⟨key⟩17(1)—LAW MAK-
ING NONSUPPORT OF MINOR CHILD AN OF-
FENSE OPERATIVE NOTWITHSTANDING LATER
ADOPTION OF CONSTITUTION OF 1913.

Act No. 34 of 1902, making it an offense to
willfully neglect to support a minor child, is not
invalid, as, even if Const. 1913, art. 118, su-
perseded the amendments to Const. 1898 by Act
No. 83 of 1908 and Act No. 48 of 1910, and
is not self-operating, yet, in view of Const.
1913, Schedule, art. 326, § 1, providing that
all laws in force at the adoption of such
Constitution and not inconsistent therewith
shall remain in force until altered or repealed
by the General Assembly, and in view of sec-
tion 7, relating to the effect of amendments to
Const. 1898, and even if the Legislature has not
acted, the juvenile courts throughout the state
still have power to function, and the laws in
force at the adoption of Constitution 1913 are
still operative until the Legislature acts.

Appeal from Juvenile Court, Parish of
Orleans; Andrew H. Wilson, Judge.

L. Edward Clark, herein prosecuted as Edwin L. Clark, was convicted of willfully and without just cause neglecting to provide for the support of his minor child, and he appeals.  Affirmed.

See, also, 144 La. 328, 80 South. 578.

L. Edward Clark, in pro. per.

A. V. Coco, Atty. Gen., and Chandler C. Luzenberg, Dist. Atty., and Eugene Stanley, Asst. Dist. Atty., both of New Orleans (T. Semmes Walmsley, Asst. Atty. Gen., of counsel), for the State.

DAWKINS, J.  Defendant was charged in a bill of information filed in the juvenile court for the parish of Orleans with willfully and without just cause neglecting to provide for the support of his minor child, Courtney Clark, in violation of Act No. 34 of 1902. Having been convicted and sentenced to serve six months in the parish jail, and also to pay a fine of $100 and costs, and in default thereof to serve an additional six months in jail, he prosecutes this appeal.

We find in the record eight bills of exception, which we take up in their order consecutively as follows:

### Bill No. 1.

[1, 2] Before the trial defendant, appearing in person as his own counsel, in which manner he has appeared throughout, including the presentation of the case to this court, filed a plea to the jurisdiction of the lower court and of former acquittal.  These having been overruled, bill No. 1 was reserved to the ruling of the court.

The theory upon which it was contended that the court below was without jurisdiction (as outlined in the pleading styled "motion to quash," which also contained the plea of former acquittal) was that, accused having been tried and convicted upon a charge made in an affidavit for failure to support the child during a period of time prior to that covered by the bill of information in the present case, and having appealed that case to this court, the juvenile court had lost jurisdiction by the completion of the appeal and filing of the transcript here, as would undoubtedly be the case in either a criminal or civil case where the same subject-matter or act were the basis of the new action sought to be instituted or prosecuted in the court from which the appeal had been taken. But in the present case, as above indicated, defendant is not being prosecuted for neglect to support the child during the period of time covered by the affidavit in the former case, but for a period since that time, and as was held in a former case against this same defendant:

"Even then, although it be contended that desertion is an affirmative act, which cannot be repeated until and unless the deserter has returned to those whom he has deserted, the same cannot be said of neglect to provide, concerning which, in State v. Baurens [117 La. 136, 41 South. 442] supra, it was held that the statute here invoked contemplates that a man shall at all times provide for his wife and children, in destitute or necessitous circumstances, and that his neglect to do so during a period of time not covered by a previous conviction is a distinct offense to which the plea of autrefois convict, predicated upon such conviction, is not good." State v. Clark, 144 La. 334, 80 South. 580.

It appearing, therefore, that the present prosecution does not rest upon the same subject-matter or acts as the one referred to, the plea to the jurisdiction can have no place in this case.

What we have said on the plea to the jurisdiction applies with equal force to the plea autrefois acquit.  The charge is not for the same offense in the sense contemplated by article 9 of the Constitution.  Even if it were the same offense, there is much force in the view expressed by the lower court that, defendant having prosecuted an appeal from a conviction in the former case, and this court having quashed the charge in that case on the motion of the accused, acquiesced in

by the state (for the reason that an adult cannot be prosecuted by an affidavit in the juvenile courts of this state, as decided in the case of State v. Simms, 82 South. 747),[1] the defendant was never in jeopardy. State v. McGarrity, 140 La. 441, 73 South. 259.

### Bill No. 2.

[3] Defendant objected to going to trial after the overruling of the pleas covered by the preceding bill, for the reason, as alleged, that no demand had been made upon him by the mother of the child or by the state for its support, and for the further reason that the child was not properly identified in the bill of information, it being mentioned therein as Courtney Clark, whereas defendant contended that its correct name was Courtney Arvid Clark. These objections were overruled by the lower court, and form the basis of bill of exceptions No. 2.

As to the necessity for a demand in the case against this defendant quoted from supra, we took occasion to say:

"No one is in a better position to know whether the father supports the child, and no one should be in a better position to know whether the child is in need of support, than the father himself; and the law imposes a penalty on him if he fails to furnish such support, without requiring the mother to remind him of his obligation."

If the Legislature had intended to make a demand necessary, it would doubtless have done so in unmistakable terms. The only condition which the law attaches to the failure to support is that the minor shall be in necessitous circumstances. That condition is properly alleged in the bill. To uphold the contention of the defendant on this point would be for the court to say that the lawmaker intended to penalize the failure to comply with such a demand instead of the neglect to support the offspring, a conclusion

---
[1] 145 La. 678.

which could only be arrived at through a strained and distorted interpretation of language which appears to us as plain and unambiguous.

The former case against the accused referred to above (144 La. 328, 80 South. 580) is cited by the defendant as well as the state upon the question of demand; but, while we set aside the conviction there, it was upon the undisputed showing that defendant had been a resident of this state for some years, and the mother and child had come to the city of New Orleans, where a prosecution was instituted for failure to support during a period of their residence here which was not known to defendant, and we held that, inasmuch as the failure must be willful and without just cause, he could not be said to have willfuly neglected to support the child when he did not know that it was in the state (the courts of this state only having jurisdiction of offenses committed within their jurisdiction). The case turned upon its own peculiar circumstances, and we are constrained to hold that, under present conditions, no demand was necessary.

[4] As to the other point in the bill, that the middle name of the child was not alleged, we think, in view of Revised Statutes, § 1063, and the fact that the identity of the child was not in doubt, the contention of the defendant is wholly without merit. Marr's Criminal Jurisprudence, p. 403.

### Bill No. 3.

[5] This bill was reserved to the overruling of an objection by the defendant to the introduction in evidence of two affidavits made by the wife as the basis of her former prosecutions of accused for failure to support the same child. The court's per curiam informs us that they were offered for the sole purpose of showing that defendant knew that the child was in necessitous circumstances, and in response to the contention that no de-

mand had been made for support. We think the ruling was correct.

### Bill No. 4.

[6] Bill of exceptions No. 4 was reserved to the admitting in evidence over the defendant's objection of two letters purporting to have been written by accused to his alleged wife, and a contract supposed to have been made between him and an insurance company for whom he was working. Defendant contends that the purpose of the offering was to prove a marriage between the accused and the mother of the child, that this could not be done in the manner attempted, and that the handwriting and signatures had not been proved. The per curiam informs us that the marriage had already been proven by the state in chief by copies of the official records, properly certified; that accused had taken the stand and sworn that he was not the man who had contracted it, and that the alleged wife had been placed upon the stand in rebuttal and had identified the accused as the man whom she had married; that she had identified the letters as having been received about the dates which their envelopes bore (though not dated themselves); that she had frequently seen him write and sign his name, had received hundreds of letters from him, and recognized the letters as being in his handwriting; that the signature to the contract was his, and that there was other proof tending to establish the letters and contract as his; and that the purpose of introducing the documents in evidence was to corroborate the other evidence going to prove the identity of the accused as the man whom the witness had married. The ruling was therefore correct.

### Bill No. 5.

This bill embraces the same issue raised by bill No. 2, that is, that the prosecution should have been preceded by a demand for the support of the child, and is covered by our conclusions expressed thereon. It was presented in the form of a request that the court charge itself that the law was as contended by defendant, which was properly refused.

### Bill No. 6.

[7] This bill recites that defendant requested the lower court to charge itself:

"* * * That, where the state rests its case upon a marriage by ceremony, no evidence is admissible to prove a marriage by admission, reputation, or cohabitation; that no presumption of marriage arises from such evidence."

We are informed by the per curiam that the charge requested had reference to the documents offered in evidence over the objection noted in bill No. 4, and that they were only offered and received for the purpose of proving the identity of defendant.

In these circumstances the requested charge was inapplicable, and the ruling refusing it was correct.

### Bill No. 7.

[8] Bill No. 7 was reserved to the overruling of defendant's motion in arrest of judgment. The motion alleges that:

"Act 34 of 1902, under which your defendant has been tried and convicted, is unconstitutional, null, and void, being violative of articles 31, 48, 50, and 118 of the Constitution of the state of Louisiana, adopted in 1913, and that Act 34 of 1902, under which defendant has been tried and convicted, has been vacated, annulled, and rendered of no effect by article 118 of the Constitution of the state of Louisiana of 1913, especially by section 3 thereof; that said article of said Constitution of the state of Louisiana is not self-operating, and the Legislature has passed no law to carry the constitutional mandate into effect."

### Constitution, art. 31.

We gather from defendant's brief and oral argument that his contention is that Act 34 of 1902 violates article 31 of the Constitution of 1898, in that it makes both desertion and

failure to support one's minor children offenses under its provisions, and penalizes either act; the idea being, we infer, that two separate acts cannot be denounced as crimes in the same law. However, this article of the Constitution does not prohibit the creating of any number of crimes in the same act, so long as the statute has but one object. The article in question reads:

"Art. 31. Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in the title."

The question therefore is: Did the Legislature, by denouncing and penalizing the desertion of a minor child in necessitous circumstances, and also the failure to support him or her, under the same conditions, seek to accomplish one or two objects? Our opinion is that the object or purpose of the law was to compel those unnatural fathers, whom nature has not imbued with sufficient inclination, to perform their obligations toward society and their destitute offsprings. It would have been sufficient, in our judgment, if the Legislature had labeled this law "An act to protect destitute minors," and to have included therein any act or thing as a crime which might have been pertinent to that title, such as desertion (which has the same effect, if the child be destitute as the failure to provide, for we think society has the right, through its lawmaking machinery, to see that the moral welfare of minors is safeguarded, as well as that their personal and physical needs are provided for), failure to support, failure to educate within the parents' means, or any other thing which might cause such minors to become charges upon the public. There was but one object, and that was to compel the father to care for the moral and physical welfare of his minor children.

### Article 48.

[9] We are unable to understand in just what respect defendant contends that Act 34 of 1902 violates article 48 of the Constitution, which prohibits the passage of special or local laws. The act in question is a general law, effective throughout the state, and applies to any father of whatever race or class who may fail to discharge his duty towards his minor child or children in necessitous circumstances.

### Article 50.

[10] Article 50 of the Constitution has nothing to do with this case, since it merely provides the manner and circumstances under which a special or local law may be passed dealing with subjects not prohibited by article 48. The act not being a special or local law, these provisions can have no application.

### Article 118.

[11, 12] This article of the Constitution of 1913 embraces the provisions of Act No. 83 of 1908, amending the Constitution of 1898 and creating juvenile courts throughout the state, as amended by Act No. 48 of 1910 (also an amendment to the Constitution) which the convention of 1913 copied into the Constitution of that year in lieu of the old article 118, which had become obsolete.

As we understand defendant's contentions, they are:

(1) That, inasmuch as the Legislature and the people (voting upon these acts as constitutional amendments) had provided a scheme complete and comprehensive in itself dealing with neglected and delinquent minors, the Act 34 of 1902 was thereby superseded in so far as it dealt with the desertion or failure to support a minor child.

(2) That, the convention of 1913 having written a new law on the subject of juveniles and juvenile courts into the Constitution of that year, it likewise superseded Acts 83 of 1908 and 48 of 1910, and is not self-operating; that neither the courts nor the provisions affecting neglected minors can become

operative until the General Assembly shall pass legislation carrying them into effect.

With regard to the first proposition it is sufficient to say that, while it is true that Acts 83 of 1908 and 48 of 1910 did provide a new departure in our law dealing with juveniles, yet the plan had to do more with the child itself in the violation of law, and, when placed in a position of exposure to crime or physical or moral suffering, classifying it as "delinquent" in the one case, and as "neglected" in the other, and did not deal with adults who contribute to such conditions, save to the extent of giving the juvenile courts so created jurisdiction to try them when charged with the violation of any existing law, or any which might be subsequently passed by the Legislature. Hence the amendments and article 118 of the Constitution of 1913 did not cover the same subject-matter as Act No. 34 of 1902. See section 4, art. 118, Const. 1913. The result is that all laws dealing with adults who contribute to the neglect or delinquency of minors were left intact, and the Legislature was left free to pass such others as it might see fit.

On the second point, that the article 118 superseded the amendments to the Constitution of 1898, and is not self-operating, even granting that both propositions are true, the "Schedule," art 326, of the Constitution of 1913, by its first section provides:

"First. That all laws in force in this state, at the time of the adoption of this Constitution, not inconsistent therewith, and constitutional when enacted, shall remain in full force and effect until altered or repealed by the General Assembly, or until they expire by their own limitation."

And there is nothing inconsistent between the present provisions and prior laws. Again, section 7 of the "Schedule," art. 326, provides that all of the courts of this state "are declared to be, and shall be construed to be the same courts as those of the same name, created in the Constitution of 1898, and all amendments thereto," etc.

So that, if the Legislature has not acted, then the juvenile court in the parish of Orleans and the district courts throughout the state sitting as juvenile courts still have the power to function, and the laws in force at the time of the adoption of the Constitution of 1913 are still operative, and will be until such time as that body may choose to act.

If there be anything in article 118 of the Constitution of 1913 inconsistent with the amendments of 1908 and 1910, to that extent it is invalid as exceeding the limitations of the call for the convention. See State v. Am. Sugar Ref. Co., 137 La. 407, 68 South. 742.

### Bill No. 8.

The last bill of exceptions was reserved to the overruling of the defendant's motion for a new trial. The motion covered eight grounds or specifications of error, all of which are embraced in the seven preceding bills of exceptions, and which we have decided adversely to the contentions of the defendant.

We find no other error patent on the face of the record, and for the reasons assigned, the judgment appealed from is affirmed.