hWALTZER, Judge.

STATEMENT OF THE CASE

Leevel Holmes was charged in a two-count bill of information with molestation of a juvenile, a violation of La. R.S. 14:81.2, and carnal knowledge of a juvenile, a violation of La. R.S. 14:80. Following a jury trial, on 26 January 1995, he was found not guilty on the carnal knowledge count, and found guilty as to the molestation count to the lesser offense of attempted indecent behavior with a juvenile. On 16 February 1996, after hearing argument and denying Holmes’s motion to quash based on double jeopardy and motion in arrest of judgment, the trial court sentenced Holmes to three and one-half years at hard labor.
We affirm.

STATEMENT OF THE FACTS

Defendant Leevel Holmes, a Baptist pastor, first met the victim’s family in April of 1980, when he came here from Michigan with another pastor to conduct a revival at a church in Algiers where the victim’s family regularly attended services and functions. From 1980 to late 1983, Holmes traveled to New Orleans, specifically to the church, on several occasions. When the regular pastor of the church died, Holmes became the new pastor. The victim’s family was living in Slidell at that time, but continued attending services at the church in Algiers. Following *1004 a revival late in 1983, the family remained at the church rather than return to Slidell. The family lived at the church for a short while, until they found another place to stay.
^Because the church did not have funds to pay Holmes a salary, he also lived at the church. When the victim’s family moved out, the victim’s father decided that there was enough room for Holmes to live with them. He had his own room at the victim’s family’s residence. In addition, Holmes was paid to transport the children back and forth to school while their parents worked and was given authority over various aspects of the household, including financial matters and discipline of the children.
The victim testified that Holmes began kissing her on the mouth and touching her through her underwear when she was about ten years old. In July of 1988, when the victim was twelve years old, Holmes began to fondle her vagina without removing her underpants. The first time this occurred, the victim was in the front seat of the car with Holmes, and her brother was asleep in the backseat. After a few minutes, Holmes took the victim home, where she went into her room and cried. After this first experience, Holmes repeated this behavior several times at various places, including the car, the church study and his room in the house where they lived.
In October of 1988, Holmes attempted further sexual activity with the victim. At that time, he had begun to subsidize his income by working for an insurance company. He took the victim and her brother with him to a motel in New Orleans East to check out a room to be used for a recruitment meeting. The victim’s brother was left downstairs while Holmes took the victim upstairs to a room, pushed the victim onto the bed, pulled up her dress, unzipped his pants and took his penis out. He tried to have intercourse with her, while she told him to stop because it hurt. Holmes did not stop until his third unsuccessful attempt at intercourse with the child.
The next particular incident the victim recalled was the day before her eighth grade graduation. She was riding with Holmes in order to give him street ^directions to the home of a woman she knew. Holmes remarked that the victim was now fifteen years old, which was the age at which he had had his first sexual experience. He told her he wanted to have sex with her to remind him of his first time. He then pulled off the road, this time taking her underpants off of her, and had intercourse with her.
Holmes initiated some sort of sexual activity almost daily from this point onward. On some occasions he would stick his finger in the victim’s vagina when he did not have time to have intercourse with her. He told the victim to keep all these activities just between them. He further told her there was nothing wrong with what they were doing because he was a pastor and would not do anything wrong. In 1990 the victim began taking a sex education course at the parochial school she attended. She was taught at school that this sexual behavior outside of marriage was sinful. She confronted Holmes with questions about their sexual activity. He explained that the church which ran her school worshipped a false god. He further told her that when she became eighteen years old they would be married, which would make everything right. Holmes and the victim stopped having sexual contact at this point.
Meanwhile, the victim’s parents were having marital problems. They separated and eventually divorced. Holmes admitted to having had an affair with the victim’s mother, who testified that she had a child by Holmes, which child Holmes denied.
In December of 1993 the victim’s mother was on an errand with a recently widowed woman she knew from the church. When the woman informed her that she and Holmes were going to be married, the victim’s mother suspected that if Holmes was already serious with a woman whose husband had just died, he had probably been molesting her daughter during all those “counsel-ling sessions” when he took her into his room and locked the door. The victim’s mother then told the Uwoman that she had been having an affair with Holmes. The woman drove to her home and beeped Holmes to ' come over. The victim’s mother went into a *1005 bedroom while the woman confronted Holmes. He first denied the affair with the victim’s mother, but admitted it as she came out of the bedroom. The victim’s mother attempted to stab Holmes with a knife, but he grabbed her hand in time to prevent any harm.
The victim’s mother then went home to confront her daughter. The victim insisted on seeing Holmes before she would talk to her mother. After a lengthy conversation with Holmes, the victim came home and told her mother all that he had done to her. The victim then exposed Holmes’s activities to the church authorities, who did not believe her. In order to convince them, she hid a tape recorder and had a conversation with Holmes relative to their relationship. That tape was played for the jury and transcripts were distributed. However, much of the tape was inaudible, and the references on the tape were vague.
In addition, the victim taped a conversation she had with the woman from church, now Holmes’s wife. That tape was also played for the jury and transcripts of it were distributed. Much of this tape was also inaudible, and the references on that tape were likewise vague. Holmes testified that the apology he referred to in the tape was for disappointing the victim as to his affairs with other women. At trial, he denied having any sexual activity with the victim, though he admitted that his feelings for her changed as she got older. He admitted sending a letter resigning from the church for “sexual immorality” on the advice of church authorities. He testified that this sexual immorality consisted of his affairs with women, not any activity with the victim.

ERRORS PATENT REVIEW

IsA review of the record for errors patent reveals that Holmes was sentenced on the same date that his motion in arrest of judgment was denied, without a waiver of the delay required by La.C.Cr.P. art. 873. However, in State v. Collins, 584 So.2d 356 (La. App. 4 Cir.1991), this court held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, because Holmes in this ease raises no error relative to his sentence, the failure of the trial court to observe the delay period is harmless error.

ASSIGNMENT ONE: The trial court erred by denying the defense motion to quash the indictment based on double jeopardy.

Prior to trial appellant counsel moved to quash the indictment based on double jeopardy, which motion was denied prior to sentencing. Holmes claims that he has been placed twice in jeopardy for the same alleged actions by virtue of his prior trial and subsequent acquittal on the charge of aggravated crime against nature.
Both the United States and Louisiana Constitutions protect individuals from being put in jeopardy twice for the same offense. U.S. Const. Amend. V; La. Const. art. I, § 15 (1974). The Louisiana Supreme Court discussed the tests for double jeopardy in State v. Smith, 95-0061, pp. 3-4 (La.7/2/96), 676 So.2d 1068, 1069-1070, as follows:
Louisiana courts have applied two distinct tests to determine whether offenses are the same for double jeopardy purposes. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the U.S. Supreme Court set out a precise rule of law to determine if a double jeopardy violation has transpired. The Blockburger test is as follows: “The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two different offenses or only one, is whether each provision requires IsProof of an additional fact which the other does not.” (Citations omitted).
The other standard employed by our courts is the “same evidence” test. This test tells us: “If the evidence required to support a finding of guilt of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all of the evidence introduced at trial.” (Citations omitted.)
*1006 However, the Louisiana Supreme Court has refused to adopt a same transaction test. Rather, it has held that an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principles of double jeopardy. City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975); State v. Gaines, 96-1850, p. 9 (La.App. 4 Cir. 1/29/97), 688 So.2d 679, 684, writ denied, 97-0510 (La.9/5/97), 700 So.2d 503.
In the instant case, Holmes was charged with a variety of sexual offenses which occurred between 1 July 1988 and 31 December 1990 while he lived in the victim’s home and served as minister of her family’s church. In the instant bill of information, Holmes was charged with molestation of a juvenile and carnal knowledge of a juvenile. Holmes bases his complaint on his previous acquittal of aggravated crime against nature, charged in a separate bill of information, which was alleged to have occurred during the same time period with the same victim. More importantly, he notes that he was convicted at the second trial of only attempted indecent behavior with a juvenile. Holmes argues that indecent behavior is a lesser included offense of aggravated crime against nature, for which he had already been tried and acquitted.
However, the offenses for which Holmes was charged contained different elements, requiring different proofs. In addition, the record demonstrates that the evidence specific to the offenses for which Holmes was charged in the instant casepwere specifically excluded from the trial for aggravated crime against nature. For the most part, evidence relative to the aggravated crime against nature charge was excluded from the instant trial. A reference to that offense was injected into the instant trial by defense counsel during cross-examination of the victim.
Holmes further notes that “lewd and lascivious” behavior with or in the presence of a juvenile “for the purpose of arousing or gratifying the sexual desires of either person,” is an element of attempted indecent behavior with a juvenile, the offense for which he was convicted. Holmes cites various cases which hold that oral copulation is a crime against nature proscribed by statute. He avers that the evidence purporting to prove oral copulation at the instant trial was used to satisfy the element of the “lewd and lascivious act” in the crime for which he was subsequently convicted, though he was previously acquitted of this act. This argument is faulty as applied to this case because the prosecution at this trial was based on various other “lewd and lascivious” acts committed by Holmes, not the oral copulation allegation which formed the basis of the prior trial. The victim testified that over the course of several months Holmes repeatedly kissed her on the mouth, touched her inappropriately, fingered her vagina and had vaginal sexual intercourse with her. Accordingly, there was no double jeopardy in trying Holmes for these different offenses, nor in punishing him for his conviction on the lesser offense. This assignment of error is without merit.

ASSIGNMENT TWO: The State should have been barred by collateral estoppel from using the same audio tape and transcript which was used in the prior trial.

Collateral estoppel means that when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in a subsequent lawsuit. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In that case, the court explained that the rule of collateral estoppel emanates from the constitutional prohibition against double jeopardy which protects one from prosecution for the same offense in a subsequent trial.
The subject audio tape recorded, in a fashion, a conversation between Holmes and the victim. The particular objection raised by Holmes was to the phrases “did it”, “we did it” and “we did” used by the victim in reference to sexual conduct.
In the trial on the aggravated crime against nature charge, the trial court granted the defense motion in limine and barred reference to all sexual offenses alleged against Holmes except for the oral copulation. The victim thus responded at the prior trial that the “it” referred to on the tape was oral copulation. At the trial of the instant offense, the trial court permitted the victim to *1007 elaborate, which she did only in response to questions posed by the defense on cross-examination. The defense was attempting to attack the credibility of the victim by showing that the word “it” meant only one thing in the prior hearing, but meant something else in the instant trial. The victim explained that the “it” meant all the sexual activity she had with Holmes, but the court only permitted her to discuss oral copulation at the prior hearing.
According to the testimony of the victim, the “it” meant all sexual activity between herself and Holmes, including oral copulation. Although the jury did not accept the tape as proof of oral copulation at the first trial, it need not have been excluded from the instant trial because it also referred to other acts. Moreover, the reference to oral copulation was intentionally raised by defense counsel. Holmes should not now be able to turn this reference into an excuse for a reversal. This assignment is without merit.
1 ^ASSIGNMENT THREE: The trial judge erred in not excluding testimony of the victim’s sister based on double jeopardy.
The particular testimony related that the victim shared a bedroom with her sister, and that one night Holmes came into their room and lay down with his face by the victim’s backside. The victim’s sister further testified that she did not remember any physical contact between the two of them. She further testified that after Holmes lay there awhile, he noticed that she was awake and asked her why she was awake. She could not recall her response. The only other thing she remembered about the incident was that her sister was wearing a pink sweatshirt. Holmes avers that the above testimony “purported to show the commission of oral sex between the accused and the victim.” He argues that because this evidence was used in the prior trial for aggravated crime against nature, of which he was acquitted, its use to prove oral sex between the accused and the victim as a “lewd and lascivious act”, which is an element of indecent behavior with a juvenile, violates the double jeopardy clause.
Because the witness observed no physical contact between Holmes and the victim, the testimony could hardly prove that they had oral sex. However, the testimony did show that Holmes went to the victim’s bedroom and got into bed with her. At best, the testimony indicated that he contemplated sex with the victim. That fact could be used by the jury to bolster the credibility of the victim and diminish the credibility of Holmes, as to whether anything sexual ever occurred between them.
Considering that the evidence did not prove that oral sex' occurred between the victim and Holmes, and further considering that detailed evidence of other sexual activity between the two was presented to the jury to satisfy the “lewd and lascivious act” component of the indecent behavior offense, the admission of this Lotestimony did not violate the prohibition against double jeopardy. This assignment is without merit.

ASSIGNMENT FOUR: The trial court should have granted the defense motion in arrest of judgment based on the lack of evidence of his age.

The standard for reviewing a claim of insufficient evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
An element of the crime of attempted indecent behavior with a juvenile is that the offender must be over the age of seventeen, the victim must be under the age of seventeen, and there must be an age difference of greater than two years between the two persons. La.R.S. 14:81. Holmes correctly notes that there was no direct evidence relative to his age.
The fact that he was over seventeen years of age and more than two years older than the victim at the time of the offense can be inferred from circumstantial evidence, combined with his physical appearance and the fact that he was being tried as an adult rather than a juvenile. See State v. Shelton, 545 So.2d 1285, 1294 (La.App. 2 Cir.), writ denied, 552 So.2d 377 (La.1989); and State v. Zihlavsky, 505 So.2d 761 (La.App. 2 Cir.), writ denied, 511 So.2d 1152 (La.1987). In Shelton, the circumstantial evidence consist *1008 ed of the fact that the defendant was married to the child’s mother. In Zihlavsky, the circumstantial evidence consisted of references to the defendant as a “man” by some witnesses, testimony from the victims’ father that the defendant was a close friend of his ex-wife, and testimony from one of the victims that the defendant met his mother at “Parents without Partners.”
| nHolmes notes that age, by definition, is a creature of time. He argues that a jury should not be able to estimate a person’s age at the time of the offense based on the person’s appearance at trial several years later. He uses the trial judge’s reference, at sentencing, to the dramatic change in the victim’s appearance over this time period in an attempt to prove this point.
At the motion hearing, the prosecutor correctly noted evidence that Holmes completed four years of college and served an apprenticeship to become a minister. However, the testimony does not state at what age Holmes completed his education, nor the duration or age of completion of his apprenticeship. Other circumstantial evidence indicating Holmes’s age is his relationship with the victim’s mother and other women and his position as pastor of the church. In addition, Holmes testified himself that he was a father figure to the victim and her siblings in the absence of their own father.
In the instant case, Holmes’s date of birth, shown on the docket master, is 16 August 1951. He was therefore over forty-four years old at the time of trial and thirty-six to thirty-nine years old during the course of the offense. The arrest register indicates that Holmes was 6’4” and weighed 220 pounds at his arrest on 23 February 1994. The instant trial followed less than two years after the arrest. Contrary to Holmes’s argument, the-appearance of the victim, who was twelve when the behavior began, and twenty at trial, would be expected to change more dramatically than the appearance of an adult male who was thirty-six years old when the behavior began and forty-four at trial. Holmes took the stand, giving the jury ample time to view his physical appearance and assess his age.
Considering the circumstantial evidence in support of the age element as to Holmes, the jury’s opportunity to view him at trial, and his prosecution as an adult, a rational juror could conclude that he was over seventeen years of age and llover two years older than the victim during the commission of this offense. This assignment is without merit.

ASSIGNMENT FIVE: The trial court erred in not requiring the State to respond to the defense’s motion for a bill of particulars.

The brief contains no discussion or argument relative to this assignment. It is therefore considered abandoned. State v. Bray, 548 So .2d 350, 354 (La.App. 4 Cir.1989); Rule 2-12.4, Uniform Rules, Courts of Appeal. In addition, neither the transcript nor the minute entry indicates any objection to proceeding with trial without a bill of particulars. The minute entry from the first day of trial indicates that the defense motion in limine was denied, the motion to quash was taken under advisement, then both the State and the defense advised that they were ready for trial. Accordingly, any error in proceeding to trial without a bill of particulars was waived.

CONCLUSION AND DECREE

THE CONVICTION AND SENTENCE ARE AFFIRMED.