| ?PALEY, Judge.

STATEMENT OF THE CASE:

The defendant/relator, Mario Muralles, seeks review of the trial court’s refusal to grant a Motion to Quash Counts No. 2 and No. 5 in criminal case No. 98-1464. Count No. 2 charges that on October 5, 1996, Mr. Muralles committed aggravated crime against nature, violation of La. R.S. 14:89.1. Count No. 5 charges that on November 16, 1996, Mr. Muralles committed aggravated crime against nature, violation of La. R.S. 14:89.1.
After the District Court denied the Motion to Quash as to Counts 2 and 5, Relator filed this Writ Application with this Court, *673 Writ No. 99-K-947. This Court initially denied the Writ declining to exercise supervisory jurisdiction. Relator then applied for Supervisory Writs to the Louisiana Supreme Court, No.l999-KK-2967. The Louisiana Supreme Court granted the writ, and without deciding the legal issues presented, remanded the Writ Application to the Court of Appeal for briefing, |3argument, and a full opinion. State v. Muralles, 765 So.2d 1054 (La.2000). The matter is now before this Court on remand from the Louisiana Supreme Court.
In a related case Mr. Muralles was found not guilty of indecent behavior with a juvenile, and sexual battery. With regard to this case, the District Attorney Nolle Prossed Counts 1, 3, 4, 6, 7, and 8, and the District Court granted a Motion to Quash other counts leaving only Counts 2 and 5 pending against Mr. Muralles.
This Court must determine, whether the current criminal prosecution exposes Mr. Muralles to punishment for conduct for which he has already been tried, and found not guilty? A complete review of the procedural history of the criminal prosecutions against Mr. Muralles is necessary to evaluate the issues of double jeopardy and collateral estoppel. The State initiated three separate criminal proceedings against Mr. Muralles alleging criminal sexual misconduct between September 14th and December 7th, 1996. The State amended the charges several times creating a complex procedural history, which we set forth in outline form:
[[Image here]]
*674 [[Image here]]
, The Bill of Information 98-1465 on which Mr. Muralles was tried and found not guilty did not specifically identify the dates when the alleged criminal conduct occurred; rather, the Bill states in Count 1 that defendant, “between September 14, 1996, and December 7, 1996 committ(ed) a lewd and lascivious act upon the person of a juvenile by engaging in sex acts with the victim,” and in Count 2, that defendant, | K“in November of 1996 ... did commit sexual battery upon a juvenile, by touching of the genitals of the victim by the defendant and defendant’s genitals by the victim, a child under the age of 15.” Mr. Muralles’s double jeopardy and collateral estoppel arguments stem from the fact that he was tried and found not guilty of the crime of indecent behavior with a juvenile, which allegedly occurred between September 14, 1996 and December 7, 1996, and now the State is prosecuting him for sexual conduct that occurred on October 5th and November 16th, 1996, dates within the period of time for which he was found not guilty.
At the beginning of Mr. Muralles’s first trial, the State advised the Court outside the presence of the jury that Mr. Muralles was charged in a separate Bill of Information with aggravated crime against nature within the time frame- of September through December of 1996, and that the State intended to try Mr. Muralles at a future date for the crime of aggravated crime against nature. Additionally, at the beginning of the first trial the State filed a new Bill 98-1464, alleging eight separate *675 counts of aggravated crime against nature on specific dates. The State further advised the Court:
... in order to avoid double jeopardy problems in the future, the State is not going to take any testimony from the minor ... from the victim involving October 5th and November the 16th. And we are preserving those two dates of incident for a trial in the future.
While the State clearly indicated its desire to prosecute Mr. Muralles in a separate proceeding for separate misconduct on October 5th and November 16th, 1996, double jeopardy and collateral estoppel problems were created during the first trial because: (1) The Bill of Information on which defendant was first tried was never amended to delete the inclusion of October 5th and November 16th, 1996; and (2) contrary to the State’s representations that it would not introduce any evidence Rinvolving conduct on October 5th and November 16th, 1996, evidence of sexual misconduct on those dates was introduced during the first trial. Had the State refrained from introducing any evidence of sexual misconduct on October 5th and November 16th, 1996, double jeopardy clearly would not apply. The double jeopardy analysis in this case is complicated because the State introduced evidence of illegal sexual conduct on October 5th and November 16th. Evidence of aggravated crimes against nature (the second charge) can constitute evidence of lewd or lascivious conduct necessary for an indecent behavior with a juvenile prosecution (the first charge). Double jeopardy prohibits exposing the defendant to punishment for the same conduct twice.
The State’s position is that the defendant has never stood trial or faced jeopardy for his activities of October 5th and November 16th, 1996. The State attributes any focus during the trial on those dates to defense counsel and asserts that it was the defense’s choice to question the victim about October 5th and November 16th, 1996. Additionally, the State asserts that because different crimes are at issue, the acquittal on the charges of indecent behavior with a juvenile and sexual battery do not resolve the ultimate question of whether the defendant committed aggravated crimes against nature on October 5th and November 16th.
Mr. Muralles argues that the State keeps changing the statutes under which the same conduct is being charged. This Court’s review of the procedural history supports this assertion. There is no suggestion that the superceding or amended Bills of Information were due to newly uncovered evidence; rather, they appear to be recycling of the alleged misconduct prosecuted under different statutes.
|7In order to adequately review the evidence presented at the first trial this Court ordered Relator to supplement the original Writ Application with the complete transcript of the trial proceedings. Counsel for Relator advised the Court by letter that despite his representations at oral argument that the complete trial transcript had been transcribed and was available for the appellate court’s review, only certain witnesses’ testimonies were transcribed and available. The State and not the Relator supplemented its writ response with a transcript of the factual witnesses who testified at the defendant’s first trial. Also this Court reviewed the exhibits submitted during trial and the jury charges.
Two juvenile victims testified at Mr. Mu-ralles’s first trial: 1) R.M., the alleged victim of the molestation in the first trial and the alleged victim of the aggravated oral sexual battery in this case; and 2) J.L., the alleged victim of the sexual battery in the first trial.
*676 During R.M.’s testimony the State introduced State’s Exhibit Nos. 8, 11, and 14, all of which purported to be parts of a journal or diary of the witness. State Exhibit No. 14 was the inside cover of a spiral notebook. It contained a calendar for the entire year of 1996. On the calendar- the victim circled or boxed in the dates on which she testified that she had sexual contact with the defendant. The calendar was not purged of the two dates in question, October 5th and November 16th and both dates were circled indicating that sexual conduct occurred on these days. R.M. testified in response to a direct question by the State:
Q. And the dates. Tell the jury again how you know the dates ...
A. Because, at the beginning of the notebook, they had a calendar for each month,, and then, on those months, when anything happened, I had circled the date on the calendar.
| sState Exhibit No. 3 is a hand written factual summary prepared by R.M. detailing the sexual contact between R.M. and defendant Muralles. The summary was prepared the day she was first interviewed by the police concerning these events, and contains explicit references to sex acts. The events are chronicled by date. All references to October 5th and November 16th were removed from the summary before it was introduced into evidence.
State Exhibit No. 11 is what has been classified as the diary portion of R.M.’s journal. It is a twenty-seven page hand written document. There are no specific references to times or dates. There are no descriptions of specific sexual conduct. The document is written more in the form of a short story than a diary. R.M. testified that'in order to protect her privacy she did not write the narrative in the first person or use real names. She used pseudonyms, borrowing character names from a T.V. show, and substituting the character names for hers, Mr. Muralles, and others. While the narrative does not refer to specific dates, or specific sexual conduct, the writing clearly indicates that the character Brandon (who R.M. testifies signifies Mario Muralles), and the character Kellie (who R.M. testifies signifies her) had an inappropriate sexual relationship.

LAW

The Double Jeopardy Clause protects against successive prosecutions following acquittal or conviction, as well as against cumulative punishment for the same offense. U.S. Fifth Amendment; La. Const, art. I § 15; La.C.Cr.P. art. 591 et seq. La.C.Cr.P. art. 596 provides that double jeopardy exists only when the charge in the second trial is (1) identical or a different grade of offense for which the accused [¡¡was in jeopardy at the first trial; or (2) based on a part of a continuous offense for which the defendant was in jeopardy at the first trial. When determining whether two prescribed offenses are the same for purposes of double jeopardy, Louisiana employs both the “same evidence” test and the federal “additional fact” standard of Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), which is required of the states. State v. Sandifer, 95-2226, pp. 4-6 (La.9/5/99), 679 So.2d 1324, 1328-1330, citing United States v. Dixon, 509 U.S. 688, 696-697, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993); Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225-2226, 53 L.Ed.2d 187 (1977); State v. Knowles, 392 So.2d 651, 654 (La.1980).
Under the “same evidence” test, two offenses are the same for double jeopardy purposes if the evidence required to support the second offense would have been sufficient to support conviction under the former information or indictment. *677 The test depends upon the proof required to convict, not the evidence actually introduced at trial. City of Baton Rouge v. Ross, 94-0695, pp. 17-19 (La.4/28/95), 654 So.2d 1311, 1322-1323, citing State v. Miller, 571 So.2d 603, 605-608 (La.1990); State v. Knowles, supra; State v. Steele, 387 So.2d 1175, 1177 (La.1980). Under a “same evidence” analysis, scrutiny is directed to a trial’s “evidential focus,” Miller, supra, 571 So.2d at 606. The Court must review the facts adduced at trial in light of the verdict returned or how the evidence presented went to satisfy the state’s burden of proof. State v. Sandifer, 95-2226 at 4-6, 679 So.2d at 1329-1330; City of Baton Rouge v. Ross, 94-0695 at 18, 654 So.2d at 1322. In State v. Steele, 387 So.2d at 1178 (La.1980), the Louisiana Supreme Court, held that a plea bargain which produced a DWI conviction and dismissal of a reckless driving charge barred a later trial for negligent injuring. The court reasoned that proof of the second offense, negligent injuring, would have been sufficient to convict of reckless driving, and that |inthe State may not “relabel the offense to charge defendant a second time with the same criminal conduct.”
The “additional fact” test requires comparison of the statutory elements under which the defendant is charged. If each offense requires proof of an “additional fact” or element, which the other does not, then the statutes do not define the same offense, and the accused may be convicted and punished for both, unless the material part or gist of the second offense is essentially included in the offense for which the defendant was first tried, in which case a second prosecution is barred. Blockburger, supra. The Louisiana Supreme Court in State v. Nichols, 337 So.2d 1074, 1076 (La.1976), held that a guilty plea to the charge of resisting arrest does not bar a later trial for aggravated battery arising from the same incident if the second prosecution is based on different conduct. Resisting arrest requires opposition to a peace officer, and aggravated battery requires battery with a dangerous weapon. The major material element of aggravated battery is use of a weapon, which is not a necessary element of the crime of resisting arrest. The Court in Nichols carefully reviewed the factual allegations, finding that defendant committed the offense of resisting an officer when the defendant jumped on the police officer’s back and threatened to kill the police officer. The Court found the aggravated battery charge was based on defendant striking the police officer with a flash light and a radio microphone. The Court acknowledged that both acts arise from the same episode or transaction, but found that they were both distinct offenses because there was evidence of conduct to satisfy both crimes, and the proof was not overlapping. Since there was independent proof to support both charges, and there was no showing that the State relied on the aggravated battery conduct to obtain the resisting arrest guilty plea, double jeopardy did not apply. Likewise, in City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975), the court held that a guilty plea to running a red light is no bar to prosecution for DWI, even if arising from the same incident, as a material element of DWI is not included in running a red light.
The Double Jeopardy Clause also encompasses the principle of collateral es-toppel, which means that when an “issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); State v. Bolden, 93-1933, pp. 4-5 (La.7/5/94), 639 So.2d 721, 723. A “fact is considered ‘ultimate’ if *678 it is necessary to a determination of the defendant’s criminal liability.” Miller, supra, 571 So.2d at 607. Thus, statutory crimes need not be identical in constituent elements or actual proof to come within the meaning of the constitutional prohibition against double jeopardy. The court looks to whether proof of the same conduct is being used to prove more than one offense. Courts must carefully examine the elements of the offense charged, factual circumstances of the crime, proof adduced, the purpose for which specific evidence is introduced, and jury instructions to determine if a second prosecution is for the same conduct. See Miller, supra, 571 So.2d at 607-608 (La.1990), where the Louisiana Supreme Court found that the existence of an attempted aggravated rape acquittal was an ultimate issue resolved against the State. In Miller the State was attempting to use the attempted rape to satisfy the “seizure for an unlawful purpose” element of the kidnaping charge, and the Court concluded that the State could not use any evidence of the attempted rape in the kidnaping prosecution since the defendant had already been found not guilty of that charge.
A case with closely parallel facts to this case is State v. Holmes, 96-128 (La.App. 4 Cir. 4/11/98), 709 So.2d 1002. In Mr. Holmes’ second trial he was convicted h?pf attempted indecent behavior with a juvenile. He appealed his conviction alleging that because he was previously tried and acquitted on the charge of aggravated crime against nature, the indecent behavior with a juvenile charge placed him twice in jeopardy for the same alleged actions. Holmes, much like Muralles, was charged with a variety of sexual offenses against a juvenile victim, all of which occurred between a range of dates. Holmes argued that evidence of aggravated crime against nature was used to satisfy the element of the “lewd and lascivious act” to constitute the crime of indecent behavior for which he was subsequently convicted. Since he was previously acquitted of aggravated crime against nature, he claimed that use of the same evidence exposed him to double jeopardy. The appellate court rejected this argument, finding that the prosecution for indecent behavior was based on other “lewd and lascivious” acts committed by Holmes, not the oral copulation allegation, which formed the basis of the prior trial. The court noted that in the trial on the aggravated crime against nature charge, the trial court granted the defense’s Motion in Limine and barred reference to all sexual offenses alleged against Holmes, except for oral copulation.
In State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972), the prior conviction of defendant for simple battery barred subsequent prosecution for indecent behavior with juveniles when both prosecutions involved the same act committed by the defendant when he put his hands up under the victim’s dress, and touched her.

DISCUSSION:

The double jeopardy claim raised requires the Court to contrast the charges and evidence brought against Mr. Muralles in the first trial with the charges and evidence of the second charge.
113A comparison of statutory elements reveals that the (the first charge) indecent behavior with a juvenile, and (the second charge) aggravated crime against nature, each contains an element the other does not. Aggravated crime against nature requires oral sex, which is not a requirement of indecent behavior with a juvenile. Indecent behavior requires an “intent to arouse or gratify” element not present in aggravated crime against nature. Under Blockburge'Ss “additional fact” test, then, the offenses are not the same, and prosecutions for each presents *679 no jeopardy problem, unless the State attempts to use evidence of oral sex acts to prove the “intent to arouse and gratify” requirement of indecent behavior with a juvenile.
The first charge of indecent behavior specifies that the defendant “engaged in sex acts with a juvenile between September 14th and December 7th.” State Exhibit No. 14 establishes that sexual conduct occurred between Muralles and R.M. on all of the dates indicated on the calendar, which include October 5th and November 16th. Whether introduced intentionally or inadvertently by the State, the jury received evidence of sexual conduct on October 5th and November 16th.
The thrust of the defendant’s argument is that, when the State introduced evidence of sexual conduct on October 5th, and November 16th, 1999, that evidence constituted evidence of the current charge (aggravated crime against nature), making the current prosecution a violation of the constitutional provision prohibiting double jeopardy.
Mr. Muralles argues that the not guilty verdict on the first charge was a repudiation of the State’s theory that he and the juvenile victim engaged in “sex acts” between September 14th and December 7th, 1996, including October 5th and November 16th. The State argues that evidence that something sexual occurred, as proven by the calendar, did not expose defendant to a prosecution for aggravated crime against | Unature. However, the State ignores the fact that the unedited version of State Exhibit 11 indicates that the only sex conduct that occurred on October 5th and November 16th, 1996 was aggravated crime against nature. Since aggravated crime against nature could satisfy the “arousal” element of indecent behavior with a juvenile, double jeopardy bars the State’s second prosecution for sex acts on dates included in the first charge.
Unlike State v. Holmes, supra, where the second prosecution was based on “lewd and lascivious” acts committed by the defendant other than oral sex, in this case, the State did not formally exclude any dates, or exclude any sexual conduct for consideration by the jury in the first trial. In this case the State tried defendant Mu-ralles on the general allegation of indecent behavior between September and December, and introduced evidence of oral sex. In Holmes, the prosecution went from the specific (oral sex) to the general (indecent behavior), and as long as evidence of oral sex was not used in the second trial, there was no double jeopardy.
The State recognized the problem before trial when they advised the Court that they were not going to introduce evidence of conduct on October 5th and November 16th, 1996. The State chose to introduce that evidence, and hence created the double jeopardy. The State’s use of the victim’s calendar as evidence of defendant’s sexual misconduct on October 5th and November 16th, 1996, in the prior proceeding estopps the State from proceeding with the same evidence in a subsequent proceeding. We acknowledge that the victim did not describe in detail the sexual misconduct of October 5th and November 16th in the first trial, but her calendar established that sexual conduct occurred on those days. The only sexual conduct reflected in the unedited diary summary (State Exhibit 3) on October 5th and November 16th is oral sex. Since the victim’s calendar established at the first trial that some sexual conduct | ^occurred on October 5th and November 16th, and since the only sexual conduct that has been identified as occurring on those dates is oral sex, then it is clear that the State has already sought to punish defendant for those acts *680 of misconduct. Hence, defendant faced jeopardy for that conduct, and he can not be twice put in jeopardy for the same conduct. The trial court’s denial of the Motion to Quash Count 2 and Count 5 is reversed; the Motion to Quash Count 2, and Count 5 of Bill of Information No. 98-1464 is Granted. The matter is remanded to the District Court.
REVERSED; MOTION TO QUASH GRANTED.