678 So.2d 952 (1996)
STATE of Louisiana
v.
Carl A. EVERY.
No. 96-KA-185.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1996.
*954 John M. Mamoulides, Terry M. Boudreaux, William B. Faust, III, District Attorney's Office, Gretna, for Plaintiff/Appellee, State of Louisiana.
Linda Davis-Short, Gretna, for Defendant/Appellant, Carl A. Every.
Before Bowes, Dufresne and Gothard, JJ.
BOWES, Judge.
The defendant[1] was charged by grand jury indictment with attempted first degree murder in violation of La.R.S. 14:27 and 14:30, armed robbery in violation of La.R.S. 14:64 and aggravated rape in violation of La.R.S. 14:42. Subsequently, the defendant went to trial by jury and was found guilty of attempted second degree murder, not guilty of armed robbery and guilty of sexual battery. The defendant was sentenced to 20 years at hard labor on the attempted second degree murder conviction and 10 years at hard labor on the sexual battery conviction. The court ordered the sentences to be served concurrently and the defendant to be given credit for time served. The court recommended that the defendant serve the last year of his sentence in the Blue Waters Drug Treatment Facility and that he be evaluated for psychiatric treatment while incarcerated. This appeal followed.

FACTS
At approximately 2:30 a.m. on the morning of June 22, 1994, the Gretna Police Department received a "911" call from Ernest L. Harney (a co-perpetrator) who stated that he had witnessed a murder and wanted to report the location of the body. In order to meet with Harney, Officer Charles Heinz began to proceed to Harney's apartment located at 901 Gretna Boulevard.
While enroute to the location, Officer Heinz heard the voice of a female calling for help in the vicinity of the intersection of Gretna Boulevard and Huey P. Long. Upon further investigation, Officer Heinz discovered a white female, later identified as "K.B." "laying in the construction area on Huey P. Long, south of Gretna Boulevard." K.B. had one or two small articles of clothing on her and was covered in dust "like she had been rolling or falling or stumbling or whatever." She had suffered numerous stab wounds to her hip and chest areas and her throat was cut. Based upon her condition, Officer Heinz did not believe that she had been laying there very long. K.B. informed him that "she had been given a ride, something to that effect" by two black men and that "she had been raped and robbed." Officer Heinz then called for medical assistance and requested another officer to proceed to Harney's apartment.
Subsequently, K.B. was transported to the Meadowcrest Hospital while Harney was transported to the scene. With the assistance of Harney, Officer Heinz along with other officers who had arrived on the scene, determined that the incident occurred in a field behind Gretna Junior High School. At the scene the officers discovered a pair of woman's underwear which contained blood and mud stains, and later that morning they found the broken blade of a knife which was in a pool of blood. The officers also recovered one of K.B.'s shoes in the vicinity of the 2900 block of Huey P. Long, approximately 100 yards from the crime scene.
The officers eventually proceeded to the defendant's residence which was located in the 2700 block of Huey P. Long, approximately two and one-half blocks from the crime scene. The defendant's vehicle was parked in front of his residence. When Officer Heinz shined his flashlight into the vehicle's interior, he noticed what appeared to be a spot of blood on the floorboard. The officers then obtained a consent to search from the defendant's wife, Trina Every; and she "pointed out" the clothing that the defendant was wearing before bathing, which the officers then seized along with a green bath towel.
After obtaining a search warrant for the defendant's vehicle, the officers seized the floor mat from the driver's side which contained a spot of blood, a man's wallet containing *955 the identification of Harney and blood samples from inside and outside the vehicle.
Meanwhile, at the hospital, K.B. identified the defendant as her attacker from a photographic line-up. Subsequently, on July 14, 1994, a second photographic line-up was conducted and K.B. again identified the defendant.
At trial, K.B. testified as follows.
At approximately 2:00 a.m. on the morning of June 22, 1994, she departed her friends' Westwego residence and began to walk to a store to use the telephone "to get a ride." Before arriving at the store which was located two blocks away, she encountered a vehicle which was occupied by two black males. One of the males forced her into the vehicle and started hitting her. After "a long ride," the vehicle stopped and one of the males exited and returned stating that the key didn't fit. Later, she discovered that they had stopped at a hotel on Manhattan Boulevard.
Thereafter, they left the motel and traveled to a field behind Gretna Junior High School where the males opened her blouse, removed her pants and poured beer all over her. At that time, K.B. was seated on the rear seat and one of the males was standing by the driver's side of the vehicle while the other was standing on the passenger's side. The males then forced her to perform oral sex and to engage in vaginal intercourse. K.B. described their sexual assault as follows: "They did it at the same time. The one that hadhe had sex with me first while the other one had oral sex with me. Then they switched." She begged them to stop and tried to "push" her way out of the vehicle.
After she eventually "fought" her way out the vehicle, one of the males, whom she later identified as the defendant, stabbed her with a knife while the other fled the scene. She could not remember how many times she was stabbed; however, she did remember grabbing the blade of the knife and breaking it before passing out.
When she awoke, she observed the vehicle drive away and she noticed that her purse which contained approximately $30.00 was missing. She tried to put on her clothes, but was unable to do so. She then began walking from the field and screaming for help. In her weakened condition, she stumbled a few times and fell to the ground where she remained until an officer eventually discovered her.
Harney testified at trial in accordance with his plea agreement, but he gave the following account in contrast to K.B.'s testimony:
He and the defendant were in the defendant's vehicle riding around in Westwego. When they observed K.B., Harney said "Hold on. I know her. Pull over." When she approached their vehicle, they offered her cocaine in exchange for sexual favors. She then entered their vehicle; however, they did not force her into the vehicle nor did they strike her.
They proceeded to a field behind Gretna Junior High, but did not stop at a motel located on Manhattan Boulevard. Harney and the defendant jumped out of the vehicle and "went around to the back of the car where she was." When K.B. opened the door, Harney said "Who's first?" They both unzipped their pants and she "grabbed" them. She removed her clothes and Harney started having intercourse with her. After Harney "got on up," the defendant "got back there with her and, you know, went to handling business." Harney stated that it "looked like they was [sic] having sex ... on the back seat of the car...." However, K.B. said "Come on, man, why don't you let your partner come on? You can't do nothing." Harney also advised the officers that the defendant was unable to have sex with K.B.
Thereafter, a fight ensued between the defendant and K.B. Harney opened the rear passenger door and told the defendant to "come on." Next, he pushed K.B.'s face down and shoved the defendant stating "Man, hold on. Get up man." The defendant then exited the vehicle on the driver's side while K.B. exited on the passenger's side. When K.B. tried to run, Harney grabbed her and told her to "hold on" and "chill out." Harney began "tussling" with K.B. and the defendant approached them. After the defendant and K.B. started fighting *956 again, the defendant produced a knife. Harney pushed the defendant and the knife fell to the ground. Shortly thereafter, the defendant and K.B. were wrestling and Harney began walking away. When he turned around, he noticed that the defendant had retrieved the knife and was going toward K.B. "to stab her." Harney then fled the scene running to his girlfriend's apartment located at 901 Gretna Boulevard approximately three to four blocks away.
Upon arriving at the apartment, Harney first called his aunt and told her what had happened. Next, he made an emergency 911 call reporting that he might have witnessed a murder. When he subsequently talked to the police, he implicated the defendant and led them to his residence.
The defendant testified as follows: At approximately 12:30 a.m. on the morning of June 22, 1994 he loaned Harney his vehicle and Harney left in it alone. The defendant then went to sleep and was awakened when Harney returned the vehicle later that morning. The defendant further testified that when he opened the door of his residence to get his keys from Harney, he observed "a guy standing behind my car with his back turned towards me."
On appeal, the defendant raises five assignments of error:
1. The evidence was insufficient to uphold the verdict.
2. The trial court erred in denying defendant's motion to suppress identification.
3. The trial court erred in denying defendant's motion to sever counts.
4. The trial court failed to advise defendant of the prescriptive period for post conviction relief.
5. Also assigned as error are any and all errors patent on the face of the record.

SUFFICIENCY OF EVIDENCE
The defendant first contends that the evidence was insufficient to support the verdict in that the state failed to prove the identity of the defendant as the perpetrator of the crimes.
The standard to be used by the appellate court in evaluating the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Applying that standard to the identity element of the crime, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, writ denied, 94-0488 (La. 2/3/95), 649 So.2d 400.
In the instant case, both K.B. and Harney positively identified the defendant at trial as the perpetrator. Both Harney and K.B. positively testified that defendant stabbed K.B. several times and K.B. testified that defendant forced her to engage in oral and vaginal sex without her consent. Additionally, Ann Montgomery, an expert in the field of molecular biology and DNA analysis, testified that a towel seized from the defendant's residence contained blood which "was consistent with the victim in this case, and most probably came from her."
Viewing this evidence in the light most favorable to the prosecution, it is clear that the state met its burden to negate any reasonable probability of misidentification and also that the evidence was sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that the defendant committed the crimes.
We find that this assignment lacks merit.

MOTION TO SUPPRESS
The defendant contends that the trial court erred in denying the motion to suppress identification because the photographic lineups were impermissibly suggestive and resulted in a substantial likelihood of misidentification.
A defendant who seeks to suppress an identification must prove that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State *957 v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986), rehearing denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986); State v. Barnes, 592 So.2d 1352 (La. App. 5 Cir.1991). A photographic line-up is considered suggestive if the photographs display the defendant in such a manner that the witness' attention is unduly focused on the defendant. A line-up is also suggestive if there is not a sufficient resemblance of characteristics and features of the persons in the line-up. State v. Gabriel, 542 So.2d 528 (La. App. 5 Cir.1989), writ denied, 558 So.2d 566 (La.1990). However, strict identity of physical characteristics among the persons depicted in the photographic array is not required; all that is required is a sufficient resemblance to reasonably test the identification. This determination is made by examining articulable features of the pictures such as height, weight, build, hair color, length and texture, facial hair, skin color and complexion; and the shape and size of the nose, eyes, lips, etc. State v. Smith, 520 So.2d 1305 (La.App. 5 Cir.1988).
In the instant case each photographic line-up consisted of six photographs and it appears that the physical characteristics were sufficiently matched to reasonably test each identification. Although the defendant was the only person not wearing a shirt in each line-up, there is nothing in the record which indicated that the victim focused on that feature rather than the overall physical appearance of the defendant.
Even should the identification be considered suggestive, this alone does not violate due process, for it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Smith, supra.
The factors to consider in determining if an identification is reliable are the following:
1. the opportunity of the witness to view the criminal at the time of the crime;
2. the witness's degree of attention;
3. the accuracy of the witness's prior description of the criminal;
4. the level of certainty demonstrated at the confrontation; and
5. the length of time between the crime and the confrontation.
Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
The application of the Manson factors to the facts of the case before us leads to the conclusion that there was not a substantial likelihood of misidentification in this case. The victim had ample opportunity to view the defendant during the commission of these offenses. She was an occupant in the defendant's vehicle for an extended period of time, and when the defendant moved to the back seat to engage in sexual activity with her, he provided her with a closer view of himself.
Although the victim did not give a description of the defendant, her level of certainty demonstrated at each identification was high in that she immediately and positively identified the photograph of the defendant.
Additionally, because the two identifications occurred respectively within hours and just over three weeks of the incident, the amount of time which passed between the incident and the identifications was nominal.
Accordingly, we find that the trial court correctly denied the defendant's motion to suppress the identification.

MOTION TO SEVER
In this allegation of error, the defendant contends that the trial court erred in denying the defendant's motion to sever the three counts of the indictment. Specifically, the defendant argues that "since misidentification was the defense, the joinder of these offenses resulted in the jury's inference that defendant had a criminal disposition, resulting in his conviction despite the numerous contradictions in the testimony of the state's witnesses."
La.C.Cr.P. art. 493 permits joinder of offenses in certain situations:
Two or more offenses may be charged in the same indictment or information in a *958 separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
The offenses of attempted first degree murder, armed robbery and aggravated rape charged in the indictment were all triable by the same mode of trial, i.e., a jury, and were based on acts connected in a common scheme. Thus the offenses were properly joined in the same indictment.
However, a defendant charged in the same indictment with two or more offenses pursuant to La.C.Cr.P. art. 493 may nevertheless apply for severance of the offenses pursuant to La.C.Cr.P. art. 495.1, which provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
A defendant has a heavy burden of proof when he alleges prejudicial joinder of offenses. State v. Machon, 410 So.2d 1065 (La.1982). Motions to sever under La. C.Cr.P. art. 495.1 are addressed to the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984).
In determining whether prejudice may result from a joinder of offenses, a trial court should consider whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980).
In the instant case there has been no showing to suggest that the jury was confused by the various counts, or was unable to segregate the various charges and evidence. Nor has it been shown that the defendant was in any manner hampered in presenting his defense. Although the defendant argues that the joinder of offenses resulted in the jury's inference that the defendant had a criminal disposition, the jury's return of a not guilty verdict on the armed robbery charge suggests otherwise. Furthermore, the jury's return of responsive verdicts of attempted second degree murder and sexual battery on the remaining counts suggests that it was not hostile toward the defendant.
We therefore find that the trial court did not abuse its discretion in denying the defendant's motion to sever.

DELAYS FOR POST-CONVICTION RELIEF
We agree with the defendant's contentions that the trial court erred in failing to advise him of the prescriptive period for post-conviction relief pursuant to La.C.Cr.P. art. 930.8(C).
Such a failure to inform a defendant does not constitute grounds for reversing the sentence or remanding the case for resentencing. La.C.Cr.P. art. 921. Rather, the appropriate remedy is to instruct the trial court to advise the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La. App. 5 Cir. 9/14/94), 643 So.2d 1289.

ERRORS PATENT
The defendant requests that we review the record for errors patent on its face. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review of the record reveals no errors patent on its face.

*959 DECREE

Accordingly, the defendant's conviction and sentence are hereby affirmed and the case is remanded to the district court and the trial judge is ordered to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof in the record that defendant received the notice.
AFFIRMED AND REMANDED.
NOTES
[1] A co-perpetrator, Earnest L. Harney, was also named in the indictment. Harney pled guilty to second degree rape and testified for the State in this case.