866 So.2d 867 (2004)
STATE of Louisiana
v.
Cesar ROCA, Sr. a/k/a Cesar Balari.
No. 03-KA-1076.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 2004.
*869 Paul D. Connick, Jr., District Attorney, Juliet Clark, Terry M. Boudreaux, David Wolfe, Thomas Block, Assistant District Attorneys, Gretna, LA, for State.
Prentice L. White, Baton Rouge, LA, for defendant-appellant.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
Defendant, Cesar Roca, Sr. a/k/a Cesar Balari, appeals his conviction and sentence on two violations of La. R.S. 14:42 (aggravated rape and aggravated rape of a juvenile), a violation of La. R.S. 14:43.4 (oral sexual battery of a juvenile) and a violation of La. R.S. 14:81.2 (molestation of a juvenile). For the following reasons, we affirm his conviction and sentence and remand this matter for further proceedings.

STATEMENT OF THE CASE AND FACTS
E.B.[1] was fifteen years old at the time of trial and was born on December 28, 1986 in Sonora, Mexico but later moved to San Diego, California when she was two years old. E.B. first met defendant when she was five years old after defendant and her mother developed a relationship while in San Diego. Later E.B. and her mother moved with defendant from San Diego to Kenner, Louisiana. At that time, E.B. thought of defendant as a father and referred to him as "papa." After moving to Kenner, E.B.'s mother worked various housekeeping jobs and, as a result, a babysitter took care of her. After a period of time, defendant undertook the responsibility of caring for E.B. while her mother was working because he worked at the same building in which they lived.
E.B. stated that her relationship with defendant was initially good but that it later changed. When she was six or seven years old, she recalled an incident when she watched television in defendant's room and played "horsey" with him. When E.B. fell off of defendant's back, defendant exposed his penis and told her, "Don't be scared. I'm going to teach you." She got scared and ran out of the room. Shortly after that incident, defendant began touching her vagina and chest on numerous occasions. Defendant inserted his fingers into her vagina initially not using lubricant but later put something from a glass jar on his fingers. She recalled experiencing a small amount of vaginal bleeding and pain when she urinated. E.B. stated that defendant made her touch his penis with her hand and mouth on several occasions.
E.B. also said that, when she was eight or nine years of age, defendant for the *870 first time put his penis inside of her vagina. E.B. remembered on another occasion while watching television that defendant came into the room and told her he was "going to teach her about it." Defendant proceeded to take off her clothes and put his penis inside her vagina. E.B. stated that it hurt very badly and that she was crying. Defendant told her that she should not cry because the neighbors might hear her. Defendant also told her that she should not tell anyone about what happened because no one would believe her and that everyone would leave her. E.B. related defendant continued to have sexual intercourse with her until she was thirteen years old. During that period of time, defendant would have sex with her in both the house and in his office. When having sex with her in the office, defendant would put a closed sign in the window to prevent people from entering. E.B. noted that defendant told her that having sex with him would teach her a lot about life and that it was her duty to obey him.
She also recounted one occasion when after she and defendant watched a show about animals on television, defendant wanted to show her how animals did it on the back. He then took off her pants and put his penis in her "butt." E.B. testified that it hurt very badly.
Upon taking sex education in school and learning about incest, E.B. felt bad about herself. That same day, she went home and began defacing photographs of herself because she felt so dirty. Defendant discovered what she did to the photographs and was very angry. Later that evening, defendant came into her room and asked her if she was going to do her duties she responded "no." E.B. testified that she began to cry and later that evening told her mother what defendant did to her.
A few days after telling her mother, E.B. and her mother flew to California to stay with an aunt. While there, E.B. was examined by a gynecologist whom she told about the continuous molestation. E.B. also told police officers in California and eventually Detective Larry Dyess of the Jefferson Parish Sheriff's Office what defendant did to her.
Defendant's daughter, Gisela Chevalier, stated that she was originally born in Havana, Cuba and that she did not meet her father until she was thirty years old. She came to the United States after her father filed a petition with the United States government to have her brought to the country as a child of a U.S. citizen. Upon arriving in the United States, she lived with defendant, his wife, daughter, D.R., and youngest son, Robert Roca, at their Kenner home. Chevalier related that, prior to moving to the United States, she heard rumors of sexual misconduct involving defendant and D.R. While living in the Kenner home, defendant addressed the rumors by stating that he had a consensual sexual relationship with D.R. when she was fourteen years old. Shortly thereafter, Chevalier moved out of defendant's home without reporting the incident to police. In the summer of 1992, defendant returned to Kenner with C.B. and E.B. and moved into an apartment across the street from her. Chevalier stated that she developed a close relationship with C.B. and E.B. but in 1994 lost contact with them due to a business dispute with her father. However, in February of 2001 C.B. asked her to contact the Jefferson Parish Sheriff's Office concerning the allegations against defendant. Chevalier subsequently spoke to Detective Larry Dyess and informed him that defendant told her he had a consensual sexual relationship with her half-sister, D.R.
*871 Detective Larry Dyess of the Personal Violence Unit of the Jefferson Parish Sheriff's Office followed up an investigation conducted by detectives in California. He interviewed E.B. and reviewed the California reports and obtained a warrant for defendant's arrest. Defendant denied any inappropriate activity with E.B. Detective Dyess was contacted by Chevalier who informed him of a second victim, D.R. Detective Dyess met with D.R. who told him that she was sexually assaulted by defendant when she was a child. Thereafter, Detective Dyess booked defendant on the additional charge.
On May 3, 2001, a Jefferson Parish Grand Jury indicted defendant, Cesar Roca, Sr., a/k/a Cesar Balari, on count one, aggravated rape in violation of La. R.S. 14:42; count two, aggravated rape upon a known juvenile under the age of twelve in violation of La. R.S. 14:42; count three, aggravated oral sexual battery upon a known juvenile in violation of La. R.S. 14:43.4; and count four, molestation of a juvenile in violation of La. R.S. 14:81.2. On May 8, 2001, defendant was arraigned and pled not guilty to the charges.
Thereafter, defendant filed several pretrial motions including a motion to sever count one of the indictment. Defendant's motion to sever was heard and denied on July 8, 2002. Additionally, the State's previously filed Notice of Intent to Use Evidence of Other Bad Acts to Show Knowledge, System and Intent was heard and granted. On July 9, 2002, the State's motion to introduce other crimes evidence was re-opened and once again granted by the trial court. That same day, defendant proceeded to trial.
E.B. and D.R., defendant's biological daughter, testified at trial. D.R. related that she was born in Mexico City, Mexico and moved to Kenner with her family when she was eight or nine years old. At the age of twelve or thirteen, she returned to Mexico along with her mother and three of her brothers in order to resolve problems with her "papers." She eventually returned to Kenner when she was approximately fourteen years old. Thereafter, the relationship with defendant changed. On one occasion, D.R. asked defendant for advice on how to talk to boys and get their attention. Defendant began kissing her using his tongue and fondling her, saying that he would be her instructor in such matters. D.R. recalled a later incident where defendant was teaching her how to drive when he turned down a dead end street, unzipped his pants, took out his penis, and told her to masturbate him. D.R. testified she did not want to do it but she felt intimidated by her father.
D.R. also testified about the first time defendant raped her. Defendant took her into his bedroom, pushed her down on the bed and held her hands over her head as he had sex with her. She asked him to stop. He did not. It felt like someone was stabbing her. She attempted to resist him but defendant overpowered her. Defendant told her to relax and she would enjoy it.
D.R. noted another incident where defendant raped her in Orleans Parish. She and defendant worked together at a gas station that he managed. Defendant sent an employee home so they would be alone in the building. She consumed a bottle of aspirin in an attempt to commit suicide. Defendant noticed what she had done, took her to the bathroom outside, and stuck his fingers down her throat to cause her to vomit. Defendant proceeded to have sexual intercourse with her on the bathroom floor. D.R. eventually disclosed to her mother what defendant was doing to her. D.R.'s mother confronted defendant and defendant made a promise to D.R. that he would never do it again. D.R. testified the *872 incident was never reported to police in order to protect the family name and her brothers who were establishing careers.
Dr. Scott Benton testified as an expert in the field of forensic pediatrics and general pediatrics. Dr. Benton related that he had reviewed the records of the gynecological exam performed on E.B. on August 3, 2000 in California and noted that no abnormal or unusual findings were discovered during the examination. However, he noted that he would not expect to find any physical signs of a forced sexual encounter if the child had been abused six weeks prior to the examination.
Defendant, Cesar Roca, testified on his own behalf and denied abusing D.R. or E.B. He stated that he was seldom alone with the victims. He noted that he was never alone with D.R. in the gas station and that D.R.'s mother rode in the back seat when he taught her to drive. He opined that C.B. and E.B. were making accusations against him for financial purposes. Defendant claimed that C.B. tried to extort money from him before she went to California. C.B. was allegedly angry with him because his daughter, Gisela Chevalier, told her that he was having a relationship with another woman. Defendant believed D.R. made the accusations against him because she was angry that he was going to Cuba to marry another woman.
After conclusion of the three-day trial, a twelve-person jury returned a verdict of guilty as charged as to all counts. On August 6, 2002, defendant filed a motion for new trial which was heard and denied. After waiving delays, defendant was sentenced to consecutive sentences of life imprisonment at hard labor on counts one and two of the indictment. Defendant was also sentenced to twenty years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, to run concurrently with the sentence imposed on count two and consecutively with the sentence imposed on count one. As to count four, defendant was sentenced to fifteen years at hard labor with the first five years of the sentence to be served without benefit of parole, probation, or suspension of sentence to run concurrently to the sentences on counts two and three and consecutively to the sentence on count one. Thereafter, defendant filed a motion to reconsider sentence, which was heard and denied on August 12, 2002. This appeal followed.
DISCUSSION
Defendant contends that the district court improperly allowed the State to join count one with counts two through four when the alleged crimes did not involve the same victims, did not occur within the same time frame, and did not take place in the same manner. Defendant also argues that the joinder of these offenses lowered the State's burden of proof by allowing the State to use a twenty-year-old rape allegation to substantiate a recent rape charge against him and that joinder confused the jury as evidenced by the trial court's need to "cut and paste" jury instructions. The State responded that severance was not required, as the acts were of the same or similar character, and the testimony was presented in a logical and concise fashion. Additionally, the evidence of the crime against D.R. would have been admissible as other crimes evidence at the trial of the offenses against E.B.
La.C.Cr.P. art. 493 governs the joinder of offenses and provides as follows:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts based on the same act or transaction or *873 on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
In the present case, although the crimes were perpetrated upon different victims and at different times, they occurred under similar circumstances. Defendant, the biological father of D.R. and the live-in boyfriend of E.B.'s mother, under the guise of educating his daughters about boys and sex, began an inappropriate relationship with both victims, which culminated in defendant having non-consensual sexual intercourse with the victims. Consequently, the crimes appear to be of the same or similar character as contemplated by La.C.Cr.P. articles 493 and 493.2, and were, therefore, properly charged in the same bill of information. Defendant nevertheless contends that count one should have been severed to prevent prejudice.
La.C.Cr.P. art. 495.1 provides for severance of joined offenses, and states:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
A defendant has a substantial burden of proof when he alleges prejudicial joinder of offenses. State v. Machon, 410 So.2d 1065 (La.1982); State v. Every, 96-185 (La.App. 5 Cir. 7/30/96), 678 So.2d 952, 958. Motions to sever under La. C.Cr.P. art. 495.1 are left to the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984); State v. Every, supra at 958.
In determining whether prejudice may result from a joinder of offenses, a trial court should consider whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980); State v. Every, supra at 958.
In the instant case, the State presented its case in a logical fashion and in such a manner as to keep the evidence pertaining to each count and each victim separate and distinct. The investigation of the offenses was significantly intertwined as the officers learned of the rape of D.R. while investigating the allegations involving E.B. Further, it appears the jury was clearly able to segregate the various counts as the trial court specifically charged the jury separately as to each offense and corresponding victim.
Additionally, when determining whether two charged offenses should be severed for trial, the trial court may consider whether evidence of one offense would have been admissible as other crimes evidence at the trial of the other offense under State v. Prieur, 277 So.2d 126 (La.1973) and La. C.E. art. 404(B)(1). State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1015, writs denied, 99-2694 (La.4/17/00), 756 So.2d 325 and 01-3348 (La.2/1/02), 808 So.2d 345. La. C.E. art. 412.2 also provides for the admissibility of other crimes evidence and sets forth in pertinent part as follows:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex *874 offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on any matter which is relevant subject to the balancing test provided in Article 403.
In the present case, the evidence of each offense is relevant to establish defendant's propensity to sexually abuse young females under his supervision and care. Although defendant argues that lapse in time of twenty years between the offenses was unduly prejudicial, La. C.E. art. 412.2 does not set forth any time restrictions for the admission of the other sexual crimes evidence. Therefore, the evidence of the offense committed against either victim could have been introduced at the trial of the crimes committed against the other. Thus, the trial court did not abuse its discretion in denying defendant's motion to sever.
Defendant next contends there was insufficient evidence to support his conviction based on the lack of medical evidence to conclusively show he raped or sexually assaulted D.R. or E.B. Defendant further argues there were no eyewitnesses to corroborate the victims' stories and the only testimony the State used to support the allegations came from individuals who wish to punish him.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the fact-finding function of the jury only to the extent necessary to assure the Jackson standard of review. State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789). It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in Jackson. State v. Rosiere, 488 So.2d 965, 968 (La.1986) and the cases cited therein.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633, p. 4 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243, p. 17 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 765 So.2d 1066.
In the present case, defendant was convicted of having committed two counts of aggravated rape, one count of oral sexual battery, and one count of molestation of a juvenile. La. R.S. 14:42 defines aggravated rape, in pertinent part, as follows:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim *875 because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats or great and immediate bodily harm, accompanied by apparent power of execution.
. . . .
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.
LSA-R.S. 14:43.4 defines aggravated oral sexual battery, in pertinent part, as follows:
A. Aggravated oral sexual battery is an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
. . . .
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
The offense of molestation of a juvenile is defined in La. R.S. 14:81.2, which provides in part:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
In this case, D.R. testified that defendant began sexually abusing her by fondling and forcing her to masturbate him when she was fourteen years old. Defendant's actions ultimately led to sexual intercourse when defendant raped her for the first time when she was fourteen or fifteen years old. D.R. recounted that defendant pushed her down on the bed and while holding her hands over her head, inserted his penis into her vagina. D.R. testified she asked defendant to stop and attempted to resist but defendant overpowered her. In reference to counts two through four, E.B. testified defendant began sexually molesting her when she was six or seven years of age. E.B. recalled going into defendant's bedroom to watch television and, while in the bedroom, defendant exposed his penis. Although E.B. could not recall the exact dates, she testified that, at a later date, defendant began touching her vagina and chest. Defendant also penetrated her vagina with his fingers on numerous occasions, and she was made to touch his penis.
When E.B. was approximately eight or nine years old, defendant first had sexual intercourse with her. E.B. testified that she was watching television, as usual, when defendant came into the room and told her he was going to "teach her about it." Defendant proceeded to take off her clothes and put his penis inside of her vagina. According to E.B.'s testimony, defendant continued to have sexual intercourse with her for several years including one occasion where defendant penetrated her anally. E.B. also testified that, when she was nine or ten, defendant touched her vagina with his mouth and she was made to touch his penis with her mouth.
While defendant asserts there was no medical evidence to support that D.R. or *876 E.B. was sexually assaulted, Dr. Benton testified he would not expect any physical signs of abuse if the child was last abused six weeks prior to the medical examination of the child. Additionally, defendant contends there was no corroborating evidence to support the victims' claims; however, D.R.'s testimony was substantially corroborated by Gisela Chevalier and Regina Ulloa, defendant's sister, who both testified defendant admitted to them that he had a sexual relationship with D.R. when she was fourteen. Accordingly, viewing the evidence in a light most favorable to the prosecution, we find that a rational trier-of-fact could have concluded beyond a reasonable doubt that defendant was guilty of the charged offenses.
Defendant next argues that the trial court failed to rule on his motion to reconsider sentence and, as a result, he is barred from raising errors relative to his sentence on appeal. However, the minute entry dated August 12, 2002 reflects defendant's motion to reconsider was heard and denied. A supplement to the record was filed October 24, 2003 and reveals a ruling denying defendant's motion to reconsider sentence on August 12, 2002. Although defendant has assigned as error the excessiveness of his sentence, he has failed to brief this assignment of error. Thus, this assignment of error is abandoned. See, Rule 2-12.4 of the Uniform Rules, Courts of Appeal and State v. Bell, 00-1084 (La. App. 5 Cir. 2/28/01), 781 So.2d 843, writ denied, 01-0776 (La.4/26/02), 813 So.2d 1098.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). At the conclusion of sentencing, the trial court erroneously informed defendant that he had two days from todays date to file for post-conviction relief. La.C.Cr.P. art. 930.8 provides that a defendant has two years from the day the judgment becomes final in which to file an application for post-conviction relief. Accordingly, we order the district court to send written notice of the prescriptive period, along with a notice of when the period begins to run, to defendant within ten days of the rendering of its opinion, then to file written proof in the record that defendant received said notice. State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062.
Additionally, defendant was charged with and convicted of a sex offense as defined in La. R.S. 15:542(E). However, the trial judge did not provide written notification of the registration requirement of La. R.S. 15:542, as required by La. R.S. 15:543(A). Therefore, we remand this matter to the district court ordering that it send the appropriate written notice to the defendant outlining the registration requirements of La. R.S. 15:542, within ten days of rendition of this opinion, and that written proof of compliance and receipt by the defendant be filed in the record. State v. Stevenson, 00-1296 (La. App. 5 Cir. 1/30/01), 778 So.2d 1165, 1167.
Finally, neither the record nor any minute entry indicates that the jury was sworn as required by La.C.Cr.P. arts. 788 and 790. However, no mention of jury irregularities was raised in the trial court or on appeal. Therefore, consideration of this issue is waived. State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 752, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494.
CONCLUSION
In light of the foregoing, we affirm the defendant's conviction and sentence but remand this matter for further proceedings.
*877 CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] In accordance with LSA-R.S. 46:1844(W)(1), to protect the identity of the victims, they will be referred to by their initials, E.B. and D.R. Additionally, E.B.'s mother shall be referred to as C.B.