NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-917

STATE OF LOUISIANA

VERSUS

JIMMIE BREAUX

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 10-K-4835-D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Jimmie C. Peters, Judges.

AFFIRMED.

**Edward John Marquet**
**Louisiana Appellante Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      Jimmie Breaux

**Jimmie Breaux**
**C.P.D.C.**
**1415 Hwy 520**
**Homer, LA 71040**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Jimmie Breaux**

**Earl B. Taylor**
**27th JDC District Attorney**
**Jennifer Ardoin**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **State of Louisiana**

**SAUNDERS, Judge.**

Defendant alleges that the evidence presented at trial was insufficient to sustain the verdict of molestation of a juvenile under the age of thirteen. For the reasons discussed herein, we find the evidence was sufficient to establish this offense. Accordingly, we affirm Defendant's conviction.

FACTS AND PROCEDURAL HISTORY

On March 31, 2011, Defendant, Jimmie Breaux, was indicted for molestation of a juvenile under the age of thirteen, a violation of La.R.S. 14:81.2. On March 19, 2012, the State filed "State's Notice of Intent to Introduce Other Crimes Evidence Pursuant to La.Code Evid. Article 412.2." A hearing was held on April 17, 2012, on the State's motion. Following testimony and arguments, the trial court ruled that the other crimes evidence was admissible in this case. A jury trial commenced on July 30, 2012, following which Defendant was found guilty as charged. On August 10, 2012, Defendant filed a "Motion for Post Verdict Judgment of Acquittal." On November 29, 2012, Defendant's motion was denied.

Defendant was sentenced on March 28, 2013, to a sentence of twenty-five years imprisonment, to be served without the benefit of parole, probation, or suspension of sentence. Defendant filed a "Motion to Reconsider Sentence" on April 10, 2013, which was denied on June 27, 2013. Defendant has now perfected an appeal, wherein he alleges that the evidence was insufficient to sustain the verdict of molestation of a juvenile under the age of thirteen.

At trial, the following testimony was given. Corrine Deshotel testified that the victim, A.B., and her younger brother had been living with her and the children's grandfather for about four years. [1] She was the children's step-

---

[1] Initials are used herein to protect the identities of victims and alleged victims. La.R.S. 46-1844(W).

grandmother. She stated that the two children were removed from their mother's home by the Office of Community Services because she had been having problems with drug abuse. At first, the children were allowed only supervised visitation with their mother, but after a few years they were allowed longer, unsupervised visits. At the time of trial in July, the victim was going on twelve years old and entering the sixth grade in school. Ms. Deshotel stated that the girl was doing well in school and was a normal preteen child. Of the Defendant, Ms. Deshotel stated that she had known him for several years and had liked him. He became A.B.'s mother's live-in boyfriend shortly after the children were removed from her custody.

Ms. Deshotel testified that one day, during the summer, after the children had had a week-long visitation with their mother, another granddaughter, R.S., told her that Defendant had sexually abused her. She made R.S. call and tell her mother. Ms. Deshotel then called A.B. into her bedroom and asked her if Defendant had ever sexually abused her. She said the girl hung her head for a moment and then admitted that he had touched her genitals during the last visitation. She asked A.B. why she did not say anything. A.B. said he had threatened he would whip her if she told. When she called A.B.'s mother, she denied the allegation and said that A.B. did not like Defendant and just wanted him out of the house. Ms. Deshotel took the girl to the police the next day, and arrangements were made to take the girl to Stuller Place, an advocacy center for abused children.

A.B. testified that she had liked Defendant when her mother was around, but when she was gone, he treated her and her brother differently. She said that he would "blame stuff on us." When she tried to tell her mother, she "wouldn't listen." She described an incident when her mother and brother were not in the

house. She was watching television in her mother's bedroom when Defendant came into the room and locked the door behind him. He got on the bed with her. He turned her over, pulled up her nightgown, pulled down her shorts, and inserted his finger into her vagina. She said that she told him to stop, but he just told her to shut up. She wiggled away from him and went to her room. She said she hurriedly changed her clothes and snuck out of the house. She did not tell her mother because Defendant told her he would beat her if she did. She testified that an older cousin, R.S., told her that the same thing had happened to her. She said that R.S. told her she had to tell her grandmother.

R.S., who was fifteen at the time of trial, testified that during a visit with her grandmother, she found A.B. crying in her room. A.B. told her she never wanted to go back to visit her mother. R.S. asked her why and then guessing the problem, told her about Defendant having sex with her when she was just seven. She also stated that he had threatened to kill her family if she ever told. She said that she told her grandmother first about it happening to her, then told her grandmother about it happening to A.B.

Finally, Ms. Nicolette Joseph, a forensic interviewer for the Children's Advocacy Center, testified that she interviewed the victim. She identified a video tape made of the interview. The redacted tape was shown to the jury.

ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

ASSIGNMENT OF ERROR

Defendant's argument of insufficiency of the evidence is based primarily on his assertion that the victim's testimony was not credible, as it was "fraught with internal contradictions and on its face is illogical and not credible."

LAW AND ANALYSIS

The analysis for a claim of insufficient evidence is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, *rehearing denied,* 444 U.S. 890, 100 S.Ct. 195 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino,* 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson,* 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Furthermore, in *State v. Roca*, 03-1076, pp. 11-12 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 874, *writ denied*, 04-583 (La. 7/2/04), 877 So.2d 143 (citations omitted), the fifth circuit noted:

> In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.

Defendant was charged with molestation of a juvenile under the age of thirteen. Louisiana Revised Statutes 14:81.2(A)(1) provides:

Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desire of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

The victim testified at trial that Defendant put his finger in her vagina. When she complained, he told her to shut up. He told her he would beat her if she told her mother. She was nine years old at the time. She testified that she was home alone with Defendant. Ms. Deshotel testified that Defendant had been living with A.B.'s mother for several years, and the children sometimes referred to him as "Daddy." Ms. Deshotel also testified that Defendant was often left to supervise the children when their mother was out of the house.

The only element not established at trial by direct evidence was Defendant's age. The issue of the lack of evidence of his age was raised to the jury during defense counsel's closing argument. However, the jury was able to view Defendant during trial. There was testimony he had lived with the victim's mother for six years at the time of the offense. There was also testimony that he had had sexual contact with the victim's cousin, R.S., when she was seven years old and that occurred approximately nine years prior to the time of trial. Since the jury could view Defendant, and the issue of his age arose during closing argument, the jury obviously concluded he was over the age of seventeen when the offense was committed. *See State v. Zihlavsky*, 505 So.2d 761 (La.App. 2 Cir.) *writ denied*, 511 So.2d 1152 (La.1987), wherein the jury was able to establish the defendant's age from circumstantial evidence, and *State v. Shelton*, 545 So.2d 1285, 1294 (La.App. 2 Cir.), *writ denied*, 552 So.2d 377 (La.1989) (citation omitted), wherein the second circuit noted:

Notwithstanding the lack of direct evidence by the state that Shelton was over age 17 at the time of the offense, that fact can be inferred from the evidence that Shelton was married to the child's mother, combined with his physical appearance before the trier of fact, and the fact that he was being tried as an adult rather than a juvenile.

We find that the State presented sufficient proof of all the elements of the offense. Defendant points out that during the interview conducted at the children's advocacy center, A.B. made the statement that she hated Defendant since the day she laid eyes on him. Defense counsel questioned her extensively on this issue, pointing out to her that at an evidentiary hearing she had testified that she never had any problems with Defendant. The victim acknowledged that the two statements were inconsistent, but she explained that the first time in court she was scared to say certain things in front of everyone and that during the interview at Stuller Place she was alone with just the interviewer, and the offense had just happened.

Defendant further points out that the victim testified that she had been sexually abused when she was five years old by a man named "Rocky," who was a friend of her grandmother's. She testified that she screamed, and her mother found out and got very mad at "Rocky." In brief, Defendant argues that her reaction to "Rocky" was inexplicably different than her reaction to what she said Defendant did, indicating that this different reaction tainted her credibility. However, we note that the circumstances of the two offenses were entirely different. The first offense was committed by a friend of the girl's grandmother, who did not live in her mother's house nor was he her mother's boyfriend. In the instant case, there was a long-term relationship, and the victim explained at trial that when she had tried to complain about Defendant's behavior to her mother before, her mother would not believe her.

6

We find that the victim's testimony was consistent in the salient points, and there were reasonable explanations for the inconsistencies. Furthermore, as noted above, it is the role of the trier of fact to weigh a witness's credibility, and this court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. Accordingly, we find the evidence was sufficient to establish the offense of molestation of a juvenile under the age of thirteen beyond a reasonable double.

## CONCLUSION

In conclusion, we affirm the conviction and sentence.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules– Courts of Appeal, Rule 2–16.3.